UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
CHAD SLETTEN,

                    Plaintiff,

          - against -                    **MEMORANDUM AND ORDER**

LIQUIDHUB, INC., and JAMES McDERMOTT,       13 Civ. 1146 (NRB)
individually,

                    Defendants.
---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        Plaintiff Chad Sletten ("plaintiff" or "Sletten") brings
this action against defendants LiquidHub, Inc. ("LiquidHub") and
James McDermott ("McDermott") (collectively "defendants")
alleging unlawful treatment on account of his gender and sexual
orientation in violation of the New York State Human Rights Law,
N.Y. Exec. Law. § 290 et seq. (the "NYSHRL"), and the New York
City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq.
(the "NYCHRL").  Pending before the Court is defendants' motion
to dismiss the amended complaint in its entirety for failure to
state a claim, pursuant to Federal Rule of Civil Procedure
12(b)(6), and to dismiss all counts against McDermott based on
lack of personal jurisdiction under Federal Rule of Civil
Procedure 12(b)(2).  For the reasons stated herein, defendants'
motion is granted in part and denied in part.

## BACKGROUND

LiquidHub is a corporation organized under Delaware law with a primary place of business in Pennsylvania. Am. Compl. ¶¶ 4, 7. On or about February 13, 2012, plaintiff, a resident of New Jersey, began his employment with LiquidHub as a Principal Client Manager. Id. ¶¶ 3, 12. Although LiquidHub's headquarters are located in Pennsylvania, plaintiff worked for the company out of its office in New York, New York. Id. ¶¶ 2, 5-6. At all times material, individual defendant McDermott was employed at LiquidHub as a Director/Manager. Id. ¶¶ 8, 16. He is a resident of Pennsylvania and primarily works from LiquidHub's office in Wayne, Pennsylvania. McDermott Aff. ¶¶ 2, 4, 11. However, McDermott does communicate with the New York office of LiquidHub on a daily basis and visit there about once per week. Pl.'s Aff. ¶¶ 4-7.

## I.   The Alleged Workplace Conduct

Sletten claims that shortly after commencing his employment at LiquidHub, McDermott began to make comments about plaintiff's sexual orientation. Am. Compl. ¶¶ 16-17. His alleged statements include, but are not limited to: "[Plaintiff] dresses too good for a straight guy"; "I don't mind gay people but others in the firm don't like fags"; "Wow, I can't believe [Plaintiff] is gay, they don't like that in Philadelphia";

"[T]hings are going to change now that they know [Plaintiff] is gay back in Pennsylvania"; and "I wonder what [Plaintiff's] sexual role is." Id. ¶ 17. There is nothing in the amended complaint, however, to suggest that these statements were ever made to plaintiff directly; rather, it appears that plaintiff learned of these statements secondhand.

Plaintiff's first allegation of a direct comment occurred in February or March 2012, when three LiquidHub employees asked plaintiff whether he was married. Id. ¶ 15. The second direct interaction occurred in March 2012, when plaintiff went to lunch with McDermott, LiquidHub's CEO and plaintiff's then-supervisor Jonathan Brassington ("Brassington"), and the company's CFO David Murray ("Murray"). While at lunch, they asked Sletten about his dating life, inquiring as to whether he had a girlfriend. Id. ¶ 18. When plaintiff said that he did not but that he was going on a dinner date with a female friend that evening, the three other men responded by saying "Oh, it's a big date tonight, huh? . . . Your [sic] friends with a girl?" Id. The third and final statement that plaintiff actually heard was uttered in May 2012. After a meeting, Brassington asked Sletten, "What does D&G stand for?" in reference to plaintiff's belt buckle. Id. ¶ 24. After plaintiff responded by telling him it was the designer Dolce & Gabbana, Brassington quipped,

"Well you are a fancy guy, aren't you?"  Id.  This comment, along with the two aforementioned exchanges concerning plaintiff's romantic life, are the only direct statements that plaintiff contends were improper.

But Sletten further maintains that around the same time as these incidents, there was significant discussion of his sexual orientation behind his back.  In addition to McDermott's comments, Scott Rompala ("Rompala"), a partner at LiquidHub, also began to speak negatively about plaintiff's sexual orientation, and this conduct continued through July 2012.  Id. ¶¶ 20, 29.  Rompala's comments included referring to Sletten as a "faggot" and stating that "Brassington is going to just love knowing he hired a faggot."  Id.  In April 2012, Connie Lam ("Lam"), a senior recruiter at LiquidHub, told plaintiff that she did not want to "embarrass" him, but that Brassington and McDermott, among others, had been talking about his sexual orientation.  Id. ¶ 21.  A few months later, in July 2012, Lam told plaintiff again "that his sexual orientation was being discussed negatively" at the New York office.  Id. ¶ 28. However, plaintiff decided "not [to] complain because of a reasonable fear of retaliation and/or termination."  Id. ¶ 30.

Beyond the comments, both direct and secondhand, plaintiff alleges that he endured a series of adverse employment actions.

-4-

First, in April 2012, Brassington, to whom Sletten initially reported upon joining LiquidHub, allegedly stopped returning plaintiff's calls and emails. Id. ¶¶ 14, 23. By the next month, plaintiff was reassigned to report to a different partner. Id. ¶¶ 23, 25. At the time of his reassignment, plaintiff met with Murray, the CFO, and was told that Brassington had become "fixated" on cutting Sletten's pay and that there were "serious cash flow issues" at the company. Id. ¶¶ 26-27. Then in July 2012, plaintiff learned that two of LiquidHub's resourcing managers had reduced the priority level of plaintiff's accounts; plaintiff asserts this action meant that he would lose the potential to "close those potential clients," which would in turn reduce his income. Id. ¶¶ 31-32. After that, for the months of August and September 2012, plaintiff claims his pay was short by $3,333.33 and that for the month of September, his annualized monthly draw payment of $2,083.34 was omitted. Id. ¶¶ 33-34. Although he complained to a LiquidHub partner, plaintiff never received these funds. Id. Finally, on September 17, 2012, plaintiff was terminated from his employment at LiquidHub. Id. ¶ 38. During the conversation, Sletten was told that "he was not being fired for cause." Id. ¶ 39. Plaintiff asserts that each of these

-5-

actions, from the reassignment to his ultimate termination, was improperly motivated by his sexual orientation.

## II.  The Alleged Farmhouse Incident

On September 15, 2012, two days before his termination from LiquidHub, plaintiff was at his farmhouse in Pennsylvania when McDermott and his friend Michael Sneider ("Sneider") arrived unannounced.  Id. ¶ 36.  One or both of them were carrying guns, and they told plaintiff that they were in town for a wedding and asked to scout his property for hunting.  Id.  Plaintiff alleges that McDermott intended by his visit "to coerce and intimidate Plaintiff to quit his job."  Id. ¶ 37.  Then on September 23, 2012, Sneider and another unidentified individual showed up to plaintiff's farmhouse again, and one or both of them were armed.  Id. ¶ 42.  Sneider allegedly laughed and said, "Jimmy told me about you getting canned.  That sucks."  Id.  Nearly two weeks later, on October 5, 2012, plaintiff noticed an unidentified vehicle parked on the edge of his property all day; Sletten "felt terrorized" and called the police.  Id. ¶ 43.  Later that night, plaintiff claims that he saw Sneider emerge from the woods on his property, get in the unidentified vehicle, and drive away.  Id.  Sletten maintains that this incident "was intended by [LiquidHub and McDermott] to intimidate Plaintiff and/or interfere with his ability to exercise his protected

-6-

right to bring a legal claim and/or seek legal representation." Id. ¶ 44.

## III.  Procedural Posture

Plaintiff filed his initial complaint on February 20, 2013, naming only LiquidHub as a defendant, and LiquidHub answered on May 7, 2013.  After an unsuccessful mediation, the parties appeared before this Court on September 9, 2013 for an initial conference.  Following the conference, on September 23, 2013, plaintiff filed an amended complaint naming both LiquidHub and McDermott as defendants.  The amended complaint contains six counts: (1) retaliation under the NYSHRL; (2) retaliation under the NYCHRL; (3) interference with protected rights under the NYCHRL; (4) "supervisor liability" under the NYCHRL; (5) sexual orientation-based discrimination under the NYSHRL; and (6) sexual orientation-based and gender-based discrimination under the NYCHRL.  Defendants moved to dismiss on October 28, 2013, and the motion was fully briefed by December 23, 2013.

DISCUSSION

## I.  Legal Standard

When deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Nevertheless, a plaintiff's factual allegations "must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If he has not "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (applying Twombly to "all civil actions," including discrimination suits).

In the employment context, it is not necessary for the plaintiff to plead specific facts establishing a prima facie case for discrimination in order to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). However, in light of Twombly and Iqbal, the "continued viability" of the generous Swierkiewicz pleading standard has been called into doubt. Schwab v. Smalls, 435 Fed. App'x 37, 40 (2d Cir. 2011). "Although a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss, the claim asserted must still be facially plausible and give fair notice to the defendants of [its] basis." Baez v. Visiting Nurse Serv. of N.Y. Family Care Serv., No. 10 Civ. 6210(NRB), 2011 WL 5838441, at *5 (S.D.N.Y. Nov. 21, 2011) (internal quotation marks omitted). It may not be necessary to include

-8-

specific facts in the complaint, but "dismissal is nevertheless appropriate where the plaintiff 'failed to allege even the basic elements'" of a claim.  Maldonado v. George Weston Bakeries, 441 Fed. App'x 808, 809 (2d Cir. 2011) (quoting Patane v. Clark, 508 F.3d 106, 112 & n.3 (2d Cir. 2007)).

Before considering the substantive allegations in the amended complaint, we note that plaintiff supplemented his opposition brief with an affidavit and a letter written and signed by Lam.  "When deciding a motion to dismiss, the Court's 'review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'"  Rahman v. Schriro, No. 13-CV-6095 (CS), 2014 WL 2208050, at *3 (S.D.N.Y. May 27, 2014) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)); see also Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (noting that a court "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss").  When a party submits supplemental evidence without having been prompted, a court may either "exclude the additional material and decide the motion on the complaint alone or . . . convert the motion to one for summary judgment."  Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991) (internal quotation

-9-

marks omitted).  "Federal courts have complete discretion to
determine whether or not to accept the submission of any
material beyond the pleadings offered in conjunction with a
motion to dismiss, and thus complete discretion in determining
whether to convert the motion to one for summary judgment."
Abbey v. 3F Therapeutics, Inc., 06 Civ. 409(KMW), 2009 WL
4333819, at *5 (S.D.N.Y. Dec. 2, 2009) (internal quotation marks
and alterations omitted).

　　　Given this discretion, we decline to consider plaintiff's
additional submissions and thus restrict our analysis to the
amended complaint alone.  In the instant case, "[c]onversion is
inappropriate . . .  because no discovery has yet occurred."
Beautiful Jewellers Private Ltd. v. Tiffany & Co., No. 06 Civ.
3085(KMW), 2007 WL 867202, at *1 (S.D.N.Y. Mar. 21, 2007).  And
although this case "presents the atypical situation" where
plaintiffs, rather than defendants, submitted supplemental
documents, "[c]ourts in this Circuit have made clear that a
plaintiff may not shore up a deficient complaint through
extrinsic documents submitted in opposition to a defendant's
motion to dismiss."  Madu, Edozie & Madu, P.C. v. SocketWorks
Ltd. Nigeria, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010); see also
O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229
(S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be

amended by the briefs in opposition to a motion to dismiss."). As discussed above, plaintiff already had an opportunity to amend his complaint, and the additional affidavit and letter appear to be an attempt to further amend without leave from this Court.  Moreover, these documents were neither attached to the amended complaint nor incorporated in it by reference.  See, e.g., DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  Thus, we decline to consider plaintiff's unsolicited additional materials in deciding the instant motion to dismiss.

## II.  Retaliation

"To establish a prima facie case of unlawful retaliation under the NYSHRL, 'a plaintiff must prove that: (1) he participated in a legally protected activity; (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action.'" Stavis v. GFK Holding, Inc., 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011) (quoting Bowles v. N.Y.C. Transit Auth., 285 F. App'x 812, 814 (2d Cir. 2008)); see also Forrest v. Jewish Guild for the Blind, 819 N.E.2d 998, 1012 (N.Y. 2004).  "The elements of retaliation under the NYCHRL differ only in that the plaintiff need not prove any adverse employment action; instead, he must prove that

something happened that would be reasonably likely to deter a person from engaging in protected activity." Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) (quoting Gutierrez v. City of New York, 756 F. Supp. 2d 491, 509 n.12 (S.D.N.Y. 2010)) (internal quotation marks omitted). Thus, under both the city and state statutes, a plaintiff must adequately plead that he engaged in a protected activity. See Fattoruso v. Hilton Grand Vacations Co., LLC, 525 F. App'x 26, 27 (2d Cir. 2013); Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 363 (S.D.N.Y. 2012). "A protected activity is an activity taken in good faith to protest or oppose statutorily prohibited discrimination." Morgan v. N.Y. State Att'y Gen.'s Office, No. 11 Civ. 9389(PKC)(JLC), 2013 WL 491525, at *9 (S.D.N.Y. Feb. 8, 2013).

Sletten has failed to meet this burden. Although the amended complaint plainly states that he "did not complain because of a reasonable fear of retaliation and/or termination," plaintiff nonetheless maintains that his discussions with a LiquidHub partner regarding his reduced pay in August and September 2012 qualify as protected activity. Am. Compl. ¶ 30 (emphasis added). He is mistaken. There is no indication that Sletten linked his pay cut to his sexual orientation when he complained. See id. ¶¶ 33-34 (stating simply that "Plaintiff

complained about the pay issue"). To qualify as protected activity, a plaintiff must "clarify to the employer that he is complaining of unfair treatment <u>due to his membership in a protected class</u> and that he is not complaining merely of unfair treatment generally." <u>Aspilaire v. Wyeth Pharms., Inc.</u>, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009) (emphasis added); <u>see also</u> <u>Sharpe v. MCI Commc'ns Servs.</u>, 684 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2010) (dismissing a retaliation claim when plaintiff's complaints did not concern his membership in a protected class); <u>Thomas v. iStar Fin., Inc.</u>, 438 F. Supp. 2d 348, 366 (S.D.N.Y. 2006) (finding that a complaint was not a protected activity because the plaintiff did not allege in his complaint that his purported mistreatment was a result of racial bias). Because plaintiff did not link his pay cut to his sexual orientation when lodging his grievance, Sletten did not engage in a protected activity. Consequently, plaintiff's retaliation claims under the NYSHRL and the NYCHRL fail on the first prong of the test, and they are hereby dismissed.

## III.   Interference

Under § 8-107(19) of the NYCHRL, it is unlawful "for any person to coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected pursuant to [§ 8-107]." N.Y. City Admin.

Code § 8-107(19).  "Threats are required to state a claim for violation of Admin Code § 8-107(19)."  <u>Poolt v. Brooks</u>, 967 N.Y.S.2d 869 (Sup. Ct. 2013) (citing <u>Montanez v. N.Y. City Hous. Auth.</u>, 773 N.Y.S.2d 549 (App. Div. 2004)); <u>see also</u> <u>Artis v. Random House, Inc.</u>, 936 N.Y.S.2d 479, 487 (Sup. Ct. 2011); <u>cf.</u> <u>Guan N. v. N.Y.C. Dep't of Educ.</u>, No. 11 Civ. 4299(AJN), 2013 WL 3819609, at *7 (S.D.N.Y. July 23, 2013) (deciding that plaintiff could bring a § 8-107(19) claim because she adequately alleged that defendant took "threatening actions against her").  As defined in the Second Circuit, a "threat" is the creation of "[a]n impression of impending injury."  <u>United States v. Davila</u>, 461 F.3d 298, 302 (2d Cir. 2006).

Plaintiff never alleges the requisite threat.  Instead, he asserts that when McDermott and Sneider arrived at plaintiff's farmhouse with a gun, stated that they were attending a local wedding, and asked to scout the property for hunting, they were actually trying "to coerce and intimidate [Sletten] to quit his job" in violation of § 8-107(19).[1]  Am. Compl. ¶ 37; <u>see also</u> <u>id.</u> ¶ 36; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Am. Compl. ("Pl.'s Opp'n") at 17-18.  Despite plaintiff's

---

[1] The amended complaint further alleges that plaintiff was intimidated by McDermott's friend Sneider and another unknown individual on two subsequent occasions.  Am. Compl. ¶¶ 42-44.  This conduct is irrelevant.  Plaintiff makes no assertion that warrants imputing these individuals' actions to either LiquidHub or McDermott.  Thus, even if the alleged conduct may have violated § 8-107(19), neither defendant in this case may be held liable.

-14-

contention that McDermott and his friend's trip to the farmhouse constituted a "clear" attempt to coerce plaintiff's resignation, Pl.'s Opp'n at 18, the purpose of the visit is anything but obvious; in fact, the "more likely explanation[]" for McDermott and his friend's conduct is that they were honestly interested in surveying the property for hunting purposes. Iqbal, 556 U.S. at 681.  McDermott and his friend's appearance at Sletten's house may be strange, but plaintiff makes an unwarranted logical leap when he asserts that these actions were intended to coerce and intimidate him into leaving LiquidHub.  Rather than articulate a legitimate threat, as is required under the NYCHRL, plaintiff offers little more than "labels and conclusions." Twombly, 550 U.S. at 555.  Ultimately, "courts have no obligation to entertain pure speculation and conjecture," and we therefore dismiss plaintiff's interference claim.  Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011).

## IV.  **Hostile Work Environment**[2]

In order to prevail on a hostile work environment claim under the NYSHRL, "a plaintiff must make two showings: (1) that

---

[2] Although the amended complaint does not explicitly state a claim for hostile work environment, plaintiff does state claims for "unlawful discriminatory practice[s]" under the NYSHRL and for "supervisor liability" under the NYCHRL.  Am. Compl. ¶¶ 55, 64–65.  Both parties approach these claims in their briefs as if they allege a hostile work environment, and we will do so as well.  See Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 11; Pl.'s Opp'n at 9–12.

the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." Summa v. Hofstra Univ., 708 F.3d 115, 124 (2d Cir. 2013) (quoting Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009)) (internal quotation marks omitted). Under the NYSHRL, a "hostile work environment claim requires a plaintiff to show that a workplace is 'so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.'" Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013) (quoting Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002)).

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citations and internal quotation marks omitted). On a hostile work environment claim, "even if the harassing conduct does not rise to the level of being 'severe and pervasive,'" a defendant may still be liable

under the NYCHRL.  Id. at 110 (citing Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 38 (App. Div. 2009)).

As discussed above, plaintiff has complained of only a few statements that he heard directly.  First, three coworkers, including LiquidHub's CEO, asked him whether he was married. Am. Compl. ¶ 15.  Second, there is the incident when McDermott, Brassington, and Murray asked plaintiff if he was dating and if he had a girlfriend; when Sletten responded that he had a dinner date that night with a female friend, they allegedly said, "Oh it's a big date, huh? . . . Your [sic] friends with a girl?!" Id. ¶ 18.  The third and final direct statement was when Brassington asked plaintiff, "What does D&G stand for?" in reference to plaintiff's belt buckle.  After plaintiff responded by telling him it was the designer Dolce & Gabbana, the CEO then stated, "Well you are a fancy guy, aren't you?"  Id. ¶ 24.

Plaintiff supplements these statements with a host of comments of which he learned secondhand.  These comments include those from McDermott that plaintiff "dresses too good for a straight guy"; his claim that "I don't mind gay people but others in the firm don't like fags"; his belief that "things are going to change now that they know [Plaintiff] is gay back in Pennsylvania"; and "I wonder what Plaintiff's sexual role is?" Id. ¶ 17.  Additionally, Sletten alleges that non-party coworker

-17-

Rompala called him a "faggot" and commented that "Brassington is going to just love knowing that he hired a faggot." Id. ¶ 29. The extent of the behind-the-back commentary is unknown, but it did reach levels such that Lam told plaintiff on two occasions that his sexual orientation was the subject of negative conversation. Id. ¶¶ 21, 28.

Although many of the statements, especially the incendiary ones, were heard secondhand rather than directly, they should not be ignored for the purposes of our analysis. See Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) ("The mere fact that [a plaintiff] was not present when a . . . derogatory comment was made will not render that comment irrelevant to his hostile work environment claim."); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) (finding that the district court erred in ruling that statements uttered outside plaintiff's presence had no probative value). This Court recognizes that "learn[ing] second-hand of a . . . derogatory comment or joke by a fellow employee or supervisor can also impact the work environment." Schwapp, 118 F.3d at 116; see also Torres v. Pisano, 116 F.3d 625, 633 (2d Cir. 1997) ("[A]n employee who knows that her boss is saying [derogatory remarks] behind her back may reasonably find her working environment hostile.").

-18-

However, we also find that secondhand comments are not as impactful on one's environment as are direct statements; consequently, they are less persuasive in stating a hostile work environment claim.  See Woodard v. TWC Media Solutions, Inc., No. 09-cv-3000 (BSJ)(AJP), 2011 WL 70386, at *12 (S.D.N.Y. Jan. 4, 2011), aff'd 487 F. App'x 613 (2d Cir. 2012) ("[W]here plaintiff was not the direct recipient of harassing or threatening comments, they are far less persuasive in establishing a claim of hostile work environment."); see also Yuknis v. First Student, Inc., 481 F.3d 552, 555-56 (7th Cir. 2007) (Posner, J.) ("Offense based purely on hearsay or rumor really is 'second hand'; it is less credible, and, for that reason and also because it is less confrontational, it is less wounding than offense based on hearing or seeing.").  Indeed, when the only offensive statements are learned of secondhand, they are insufficiently "severe and persuasive," in and of themselves, to support a claim for a hostile work environment under the NYSHRL.  See Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 182 (2d Cir. 2001) (finding that the "prohibition against hostile work environment discrimination affords no claim to a person who experiences it by hearsay"); accord Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 459 (S.D.N.Y. 2013); see also Tavares v. Sam's Club, 178 F. Supp. 2d 96, 102 (D.

-19-

Conn. 2001) (holding that when "plaintiff has not alleged that _any_ . . . derogatory statements were ever made to her or in her presence," remarks later relayed to the plaintiff are insufficient to meet the "severe and pervasive" standard).

It is true that the amended complaint describes instances when LiquidHub employees spoke directly to plaintiff and plaintiff was offended. However, the direct comments of which Sletten complains are fundamentally inoffensive. There is nothing in these remarks that "conveys anything but curiosity about a co-worker, and such quotidian workplace interactions are not tantamount to discrimination." Higgins v. NYP Holdings, Inc., 836 F. Supp. 2d 182, 191 (S.D.N.Y. 2011) (internal quotation marks omitted). Thus, the direct statements are insufficient, and plaintiff's entire hostile work environment claim is based on the secondhand statements listed above. At least some of these comments are offensive, both subjectively and objectively, but we find that their indirect nature prevents them, standing alone, from being sufficient to constitute the "severe and pervasive" harassment that is required as a matter of state law. Therefore, plaintiff has not met the threshold requirement for pleading a NYSHRL hostile work environment claim, and that claim is hereby dismissed.

Although Sletten has failed to state a claim under the NYSHRL, we must analyze his NYCHRL claim independently. See Mihalik, 715 F.3d at 109; James v. N.Y.C. Health and Hosp.'s Corp., No. 12 Civ. 8762(KBF), 2014 WL 1485393, at *13 (S.D.N.Y. Apr. 15, 2014). The city statute is more plaintiff-friendly than the NYSHRL -- it asks simply whether plaintiff was "treated less well than other employees" because of his protected status. Williams, 872 N.Y.S.2d at 39. Because the NYCHRL is construed "more liberally" that its state counterpart, Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009), "a defendant might be liable under [the] NYCHRL but not under state or federal statutes," E.E.O.C. v. Vamco Sheet Metals, Inc., No. 13 Civ. 6088(JPO), 2014 WL 2619812, at *5 (S.D.N.Y. June 5, 2014) (citing Mihalik, 715 F.3d at 109-13). This is not to suggest that plaintiff's burden in pleading a hostile work environment claim under the NYCHRL is trivial. "[T]he NYCHRL is not a 'general civility code,'" Mihalik, 715 F.3d at 110 (quoting Williams, 872 N.Y.S.2d at 40-41), and when "the conduct alleged is far from a borderline violation" of state law, then the plaintiff has failed to state a claim under the NYCHRL as well, Woodard, 2011 WL 70386, at *13.

In this case, plaintiff learned that, beginning in April 2012, his sexual orientation was being negatively discussed by

his coworkers and supervisors.  Am. Compl. ¶¶ 23, 28.  Even though Sletten did not hear the antagonistic comments directly, the fact that his colleagues repeatedly mocked his sexual orientation behind his back and that plaintiff learned about this behavior adversely impacted his work environment and meant that he was treated less well than other employees based on his sexual orientation.  See Garrigan v. Ruby Tuesday, Inc., No. 14 Civ. 155(LGS), 2014 WL 2134613, at *4 (S.D.N.Y. May 22, 2014) (finding that plaintiff had pled a hostile work environment claim under the NYCHRL, even where federal claims had been dismissed, when the complaint alleged that the defendant "treated Plaintiff less well by spreading rumors about her at work").  The comments complained of by plaintiff constitute more than "petty slights or trivial inconveniences," for they plausibly created an environment in which Sletten experienced "differential treatment" on account of his sexual orientation. Mihalik, 715 F.3d at 110, 111.  Accordingly, defendants' motion to dismiss plaintiff's hostile work environment claim under the NYCHRL is denied.

## V.  Discrimination

To state a NYSHRL claim for discrimination on the basis of sexual orientation, plaintiff must plead that: "(1) he is a member of a protected class; (2) he is competent to perform the

job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Ardigo v. J. Christopher Capital, LLC, No. 12 Civ. 3627(JMF), 2013 WL 1195117, at *3 (S.D.N.Y. Mar. 25, 2013) (quoting Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005)). With regard to the third prong -- an adverse employment decision or action -- this is "generally characterized as a materially adverse change in the terms and conditions of employment," which "may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted).

As it does for hostile work environment claims, the NYCHRL requires an independent analysis and a more liberal construction of discrimination claims. "Under the NYCHRL, a plaintiff need not allege a materially adverse employment action as required by the NYSHRL." Pedrosa v. City of New York, No. 13 Civ. 01890(LGS), 2014 WL 99997, at *6 (S.D.N.Y. Jan. 9, 2014) (citing Mihalik, 715 F.3d at 114). Instead, "[t]o state a claim for

discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive." Gorokhovsky v. N.Y.C. Hous. Auth., 552 F. App'x 100, 102 (2d Cir. 2014). Nevertheless, in order to state a claim, the NYCHRL "still requires a showing of some evidence from which discrimination can be inferred." Ben-Levy v. Bloomberg, L.P., 518 F. App'x 17, 20 (2d Cir. 2013).

Plaintiff's amended complaint contains four allegations which he claims constitute discrimination on the basis of his sexual orientation. First, on May 13, 2012, plaintiff was reassigned away from Brassington and told to report to a different partner at LiquidHub. Am. Compl. ¶ 25. Second, the "priority levels of his clients" was reduced, which increased the chances that plaintiff would lose this business and the associated income. Id. ¶¶ 31-32. Third, plaintiff alleges that his pay was reduced by $3,333.33 for the months of August and September 2012 that his annualized monthly draw payment of $2,083.34 was omitted in September. Id. ¶¶ 33-35. Fourth and finally, Sletten was terminated from his position at LiquidHub on September 17, 2012. Id. ¶¶ 38-40.

The first of these allegations -- plaintiff's reassignment -- is insufficient to state a claim, even under the NYCHRL. "A change in supervisor is analogous to a lateral transfer. A

'pure lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.'" <u>Uddin v. City of New York</u>, 427 F. Supp. 2d 414, 429 (S.D.N.Y. 2006) (quoting <u>Pimentel v. City of New York</u>, No. 00 Civ. 326(SAS), 2002 WL 977535, at *3-4 (S.D.N.Y. May 14, 2002)).   Plaintiff does not maintain that he was treated differently in any way because of the change in supervisor.   Therefore, Sletten's reassignment away from Brassington is irrelevant for the purposes of his discrimination claim.

However, each of the other three allegations constitute adverse employment actions that are sufficient under both the NYSHRL and the NYCHRL.   Two of the three involve reductions in pay -- one based on plaintiff's commissions, the other based on his salary -- and the third is his termination from the company. These are prototypical examples of adverse employment actions. Thus, the question is whether Sletten has adequately pled that these allegedly discriminatory actions occurred in circumstances giving rise to the inference that they were motivated by plaintiff's sexual orientation.[3]   We find that he has.

---

[3] Defendants' assertion at the initial conference that they had legitimate, nondiscriminatory reasons for lowering plaintiff's pay and ultimately firing him is of no import.   <u>See</u> <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 212 (2d Cir. 2008) (noting that a plaintiff need not satisfy the burden shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to survive a motion to

Although plaintiff names McDermott as an individual defendant, the key figure in the amended complaint is Brassington -- as CEO and plaintiff's former boss, he presumably acted as a decisionmaker for the company and was in a position to exert authority over Sletten's pay. See Am. Compl. ¶¶ 13-14, 25-27; cf. Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998) (finding that the president of an organization is "indisputably" among those officials whose conduct may confer liability on the organization itself). Plaintiff has pled: (1) that Rompala, a LiquidHub partner, stated that "Brassington is just going to love knowing that he hired a faggot," Am. Compl. ¶ 20; and (2) that Brassington spoke about plaintiff's sexual orientation behind his back in a way that Lam, plaintiff's coworker, believed that Sletten may consider embarrassing, id. ¶ 21.  The month after learning of these comments, plaintiff met with the CFO, who told him that his pay would be reduced and that Brassington was "fixated" on this pay cut.  Id. ¶ 27. Finally, at the time of his discharge, Sletten was told that he was not being fired for cause.  Id. ¶ 39.

It is true that plaintiff did not hear any of Brassington's remarks directly and that they all may prove to be impermissible

---

dismiss).  Given the stage of this litigation, our inquiry is limited to the face of the amended complaint and the plausible inferences drawn therefrom.

hearsay should this case progress to trial. But given the lack of discovery at this stage of the litigation, plaintiff may meet his initial pleading burden through the use of hearsay evidence. See Campanella v. Cnty. of Monroe, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) (finding hearsay-based allegations permissible and further noting that "[n]either Twombly nor Iqbal altered the rule that a plaintiff need not plead specific, admissible evidence in support of a claim, and a contrary rule would confuse the principles applicable to a motion to dismiss with those governing a motion for summary judgment"). Once we consider the hearsay evidence pled by plaintiff, there is a reasonable inference that Brassington, a proxy of LiquidHub itself, harbored animus against Sletten based on his sexual orientation, and that this animus led to Brassington's "fixation" on cutting plaintiff's pay and the ultimate decision to terminate plaintiff without cause. Consequently, Sletten has met his pleading burden under both the NYSHRL and the NYCHRL for discrimination on the basis of sexual orientation.

However, our decision in plaintiff's favor on these counts is not without reservation. First, in his discrimination claim under the NYCHRL, plaintiff alleges that he was discriminated against based on not just his sexual orientation, but his gender as well. Am. Compl. ¶ 53. This allegation cannot survive.

-27-

There is nothing in the amended complaint to suggest that plaintiff was discriminated against because he is a man, and he may not assert claims of mistreatment based on his sexual orientation under the guise of a gender-based discrimination claim.  See Dawson, 398 F.3d at 217-23.  Moreover, unlike Title VII, which does not include sexual orientation as a statutorily protected characteristic, see Kiley v. Am. Soc'y for Prevention of Cruelty to Animals, 296 F. App'x 107, 109 (2d Cir. 2008), both the NYSHRL and the NYCHRL explicitly bar discrimination based on sexual orientation, see N.Y. Exec. Law § 296(1)(a); N.Y. Admin. Code § 8-107(1)(a), so plaintiff has ample avenues available to state his claim.  We therefore dismiss plaintiff's claim of gender discrimination.

Second, individual defendant McDermott cannot be held liable for the adverse employment actions that plaintiff experienced.  Under both the NYSHRL and the NYCHRL, an individual may be subject to suit only if he "actually participates in the conduct giving rise to [the] discrimination claim."  Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation marks omitted); accord Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088(RMB)(HBP), 2014 WL 1259616, at *7 (S.D.N.Y. Mar. 24, 2014).  Here, other than the blithe assertion that McDermott was "Plaintiff's supervisor and/or had

supervisory authority over Plaintiff," there is nothing in the amended complaint to indicates that McDermott played any role in the decisions to reduce the priority of plaintiff's accounts, cut his pay, or discharge him from the company. Am. Compl. ¶ 9. This sort of "conclusory allegation" is insufficient to survive a motion to dismiss. Twombly, 550 U.S. at 557. While McDermott was an actual participant in the conduct that gave rise to plaintiff's NYCHRL hostile work environment claim, the same cannot be said for the employment discrimination claims under their either the state or city statutes. Accordingly, plaintiff may state claims for discrimination on the basis of sexual orientation against only LiquidHub, not against McDermott in an individual capacity.

## VI.   Personal Jurisdiction

Individual defendant McDermott asserts that the one remaining claim against him -- hostile work environment under the NYCHRL -- must be dismissed for lack of personal jurisdiction. In diversity cases such as this one, the issue of personal jurisdiction is decided based on the law of the forum state. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). If we establish that jurisdiction was appropriate under New York law, we then must examine whether exercising jurisdiction comports with the constitutional

requirements of due process. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012). "When a defendant denies jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists over the defendant." Knight-McConnell v. Cummins, No. 03 Civ. 5035(NRB), 2005 WL 1398590, at *2 (S.D.N.Y. June 13, 2005); see DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). While we declined to consider plaintiff's supplemental submissions in evaluating his claims under the NYSHRL and the NYCHRL, for our personal jurisdiction analysis, we may consider affidavits submitted by the parties and construe them in the light most favorable to the plaintiff. See DiStefano, 286 F.3d at 84; CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Although defendants address multiple provisions of New York law in their moving papers, plaintiff's opposing memorandum focuses on New York's Civil Practice Law and Rules ("N.Y. C.P.L.R.") section 302(a)(1). "New York courts evaluating specific jurisdiction under section 302(a)(1) look to both the language of the statute and the relation between the alleged conduct and the cause of action." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New

York and, if so, (2) whether this cause of action arises from such a business transaction." Id. (alterations omitted); see also Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) ("To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."). With regard to the first prong, "[a] defendant need not physically enter New York State in order to transact business, so long as the defendant's activities here were purposeful." Licci, 673 F.3d at 61 (internal quotation marks omitted). In fact, sufficient "transactions may consist of telephone calls or other communications directed into the state." Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 358 (S.D.N.Y. 2007). For the second requirement under § 302(a)(1), "a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Best Van Lines, 490 F.3d at 249 (internal quotation marks and alterations omitted). "A connection that is merely coincidental is insufficient to

support jurisdiction." Solé Resort, 450 F.3d at 103 (internal quotation marks omitted).

In the instant case, it is clear that McDermott transacted business in New York.  While McDermott maintains that he "never individually conducted any business or engaged in any commercial transactions in New York State," his conception of a "business transaction" is too narrow in the context of § 302(a)(1). McDermott Decl. ¶ 14.  Plaintiff's affidavit, uncontested in defendants' reply brief, states that McDermott spoke to plaintiff, who worked out of the New York office, every day. Pl.'s Aff. ¶ 4.  McDermott also acted as a "liaison between the New York office and Pennsylvania headquarters," id. ¶ 6, reviewing LiquidHub's New York employees' wages, hiring, and vacation days, id. ¶ 7.  Moreover, in this liaison role, McDermott "visited the New York office at least once per week." Id. ¶ 5.  Notwithstanding defendant's argument to the contrary, the fact that McDermott interacted with New York as an agent of LiquidHub, rather than in an individual capacity, does not shield him from the reach of § 302(a)(1).  See, e.g., LaChapelle v. Torres, No. 12 Civ. 9362(AJN), 2014 WL 805955, at *6 (S.D.N.Y. Feb. 28, 2014) ("New York has expressly rejected the 'fiduciary shield' doctrine . . . , thereby rejecting the view that an individual may not be subject to jurisdiction if her

dealings in the forum state were solely in a corporate capacity."); Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43-47 (N.Y. 1988). In sum, McDermott's actions constitute the "ongoing course of conduct or relationship in the state" that satisfies the first prong of the § 302(a)(1) jurisdictional test. Licci, 673 F.3d at 62; see also Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005) (requiring consideration of "the totality of all defendant's contacts within the forum state" in determining § 302(a)(1) jurisdiction (internal quotation marks omitted)).

We also find that plaintiff's hostile work environment claim against McDermott arises out of these transactions. Regardless of where McDermott was physically standing when he uttered the statements discussed in the complaint, it was through his interactions with the New York office that he contributed to plaintiff's sexual orientation becoming a negative topic of conversation in that locale. See Am. Compl. ¶ 28 ("Lam told Plaintiff that his sexual orientation was being negatively discussed by employees . . . in the New York, New York office."). There is, at least, "some articulable nexus" between McDermott's contacts with the New York office and the hostile work environment that plaintiff experienced there. Therefore, plaintiff has demonstrated, for the purposes of its

remaining NYCHRL hostile work environment claim, that personal jurisdiction over McDermott exists under § 302(a)(1).

Finally, haling McDermott into New York court comports with federal due process principles. "Where the claim arises out of the defendant's contacts with the forum, the required minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." Cyberscan Tech., Inc. v. Sema Ltd., No. 06 Civ. 526(GEL), 2006 WL 3690651, at *6 (S.D.N.Y. Dec. 12, 2006); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The Second Circuit has found that "where personal jurisdiction is appropriate under section 302(a), the requirements of due process are met." GEM Advisors, Inc. v. Corporación Sidenor, S.A., 667 F. Supp. 2d 308, 321 (S.D.N.Y. 2009) (citing D.H. Blair & Co., 462 F.3d at 105). Accordingly, exercising personal jurisdiction over McDermott is appropriate in this case.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the amended complaint is granted in part and denied in part. Plaintiff's retaliation claims pursuant to both state and city law, his NYCHRL interference claim, and his hostile work environment claim under the NYSHRL are hereby dismissed. We also dismiss plaintiff's claim of gender-based discrimination under the NYCHRL and his claim of sexual orientation-based discrimination under both the state and city statutes as against defendant McDermott.

However, plaintiff has adequately pled two claims: (1) a NYCHRL hostile work environment claim against both LiquidHub and McDermott, and (2) a claim for discrimination on the basis of sexual orientation pursuant to both the NYSHRL and the NYCHRL against LiquidHub alone. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 16.

**SO ORDERED.**

Dated:    New York, New York
          July _10_, 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-35-

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Gabrielle O. Chimienti, Esq.
Arcé Law Group, P.C.
30 Broad Street, 35th Floor
New York, NY 10004

Bran Noonan, Esq.
Gordon & Rees, LLP
90 Broad Street, 23rd Floor
New York, NY 10004